# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ADAM DERBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19-CV-2271 SRC |
| | ) |
| RICHARD WISKUS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Adam Derby, a civil detainee at the Sexual Offender Rehabilitation and Treatment Services Center ("SORTS"), seeks leave to proceed *in forma pauperis* in this civil action brought under 42 U.S.C. § 1983. Having reviewed Plaintiff's financial information, the Court grants Plaintiff's Motion to Proceed *In Forma Pauperis*. *See* 28 U.S.C. §1915. Additionally, after reviewing the Complaint under 28 U.S.C. § 1915(e) and for the reasons discussed below, the Court will give Plaintiff the opportunity to file an amended complaint.

## I.   Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a

complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

## II. The Complaint

Plaintiff, a civil detainee at SORTS, brings this action under 42 U.S.C. § 1983, alleging violations of his first amendment right to freedom of religion; his fourteenth amendment right to equal protection under the law; and violations of the Religious Land Use and Incarcerated Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. Plaintiff names as defendants all members of the "spiritual committee" and the "Green Belt Committee" – but Plaintiff does not clarify what these committees are. ECF No. 1 at 2 ¶ 7. Specifically, Plaintiff names: (1) Richard Wiskus, (2) Chuck Lotz, (3) Jeanie Semor, (4) Hannah Newmier,[1] (5) Dr. Kimberly Buy, (6) all members of the Green Belt Committee, and (7) John Doe.[2] Plaintiff specifies that he is suing John Doe in

---

[1] Plaintiff spells this Defendant's name as both "Hannah Newmier" and "Hannah Nwemier." ECF No. 1 at 2 ¶¶ 7-8. The Court interprets these references as the same Defendant and will refer to this Defendant by the spelling used by Plaintiff in the case caption.

[2] It is unclear whether Plaintiff also intends to name as a Defendant "Brenda Swift," who is listed in multiple places in the Complaint but is not included in the case caption. *See* ECF No. 1 at 2 ¶ 8, 3; *but see* ECF No. 1 at 1, 2 ¶ 7.

both his individual and official capacities, but he does specify in what capacities the other Defendants are being sued.

Plaintiff states that he is pretrial detainee in the custody of the Missouri Department of Mental Health pursuant to the Missouri Sexually Violent Predator Act, Mo. Rev. Stat. § 632.480 *et seq.* Plaintiff describes himself as a "sincere practitioner of the Wiccan religion" and he alleges that he is being denied thirty-three (33) necessary items or accommodations for the practice of his religion. ECF No. 1 at 3. These items/accommodations include: (1) wands; (2) wooden athames;[3] (3) "idols/status";[4] (4) robes; (5) chalices; (6) books; (7) religious ceremonies on the day of holidays; (8) nighttime accommodations for full moon and sabbat ceremonies; (9) non-sexual nude images; (10) open flame fires; (11) three hours of time on sabbats (holy days); (12) wine for consumption on sabbats; (13) dream catchers; (14) rugs; (15) bracelets with charms; (16) rings with religious symbols and stones; (17) tattoos; (18) smudging personal religious items;[5] (19) access to news programs and shows that inform about politics and social issues; (20) tea light candles for personal inside use; (21) food on the Sabbath; (22) alter cloths; (23) alters; (24) foreign languages; (25) religious oils; (26) face painting; (27) pentacle plates;[6] (28) pipes; (29) musical "interments;"[7] (30) Ouija boards or spirit boards; (31) time outside daily; (32) a room for personal religious practice; and (33) food donations to the Wiccan religious feast. ECF No. 1 at 3-6.

---

[3] Plaintiff describes a 'wooden athame' as "a non-sharpened religious knife made of wood." *Id.* at 3. However, an "athame" is defined as "a usually black-handled, double-edged dagger that is used in some neo-pagan and Wiccan rituals." *Merriam-Webster Online Dictionary* (Nov. 12, 2019, 2:34 PM), https://www.merriam-webster.com/dictionary/athame.

[4] Plaintiff labelled this item as "Idols/Status" which the Court interprets as meaning "idols" and "statutes." ECF No. 1 at 3.

[5] Plaintiff explains this item as "[b]urning sage to purify a religious item for use." *Id.* at 4.

[6] Plaintiff explains this item as a non-plastic, "small plate that has a pentagon on it." *Id.* at 5.

[7] Plaintiff labelled this item as "Musical Interments" describing the need for "some type of drum or flute." *Id.* The Court interprets this item as a request for a musical instrument.

For relief, Plaintiff seeks an order from the Court requiring "the state to come into compliance" with his constitutional and RLUIPA rights, and for $1 in punitive damages.

**III.   Discussion**

   **A.   Legal Standards: Free Exercise of Religion and RLUIPA rights for a civil detainee**

Plaintiff, a civil detainee, alleges violations of his rights under the Free Exercise Clause of the First Amendment of the United States Constitution and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. *Youngberg v. Romeo*, 457 U.S. 307, 312-15 (1982). Although residents at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. *Id.* at 321. As inmates clearly retain their First Amendment right to free exercise of religion in prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), civil detainees retain such rights as well.

According to the Supreme Court, a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although the Eighth Circuit has not addressed the applicability of this standard in the civil detainee context, other courts have applied the *Turner* analysis[8] in considering constitutional claims by civilly-committed sexually violent predators. *See, e.g., Phillips v. Palmer*, No. 13-CV-4066-DEO, 2013 WL 5771026, at *3 (N.D. Iowa Oct. 23, 2013) (collecting cases).

---

[8] *Turner* applies a four-factor test to determine whether a prison regulation is reasonably related to a legitimate penological interest: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation that fully accommodate the prisoner. 482 U.S. at 89-90.

RLUIPA provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

RLUIPA does not authorize individual capacity claims against prison officials. *E.g.*, *Nelson v. Miller*, 570 F.3d 868, 888-89 (7th Cir. 2009) (citing cases); *Blake v. Cooper,* 2013 WL 523710, *1 (W.D. Mo. Feb. 12, 2013). While RLUIPA allows official capacity claims against prison officials, it does not authorize monetary damages based on official-capacity claims. *See Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009).

The legal standards for evaluating a First Amendment Free Exercise claim and a RLUIPA claim differ. However, "when faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial burden' on a prisoner's ability to practice his religion." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 833 (8th Cir. 2009). "To constitute a 'substantial burden,' government policy or actions

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs;
>
> must meaningfully curtail a person's ability to express adherence to his or her faith; or
>
> must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Id.* at 832 (citing *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

### B. Plaintiff's Arguments

Here, Plaintiff is a practitioner of Wicca, a religion recognized and accommodated by the Missouri Department of Corrections. *See Izquierdo v. Crawford*, No. 1:05CV192 CDP, 2007 WL 2873210, at *1 (E.D. Mo. Sept. 26, 2007). Plaintiff claims that the denial of "necessary" religious items and accommodations has substantially burdened the practice of his religion. Plaintiff argues that the state does not have a compelling interest in denying these items and accommodations to him. Plaintiff states further that even if the state did have a compelling interest in denying such items, SORTS' alleged blanket ban of many of these items is not the least restrictive means of furthering the state's compelling interest, as required by RLUIPA.

For example, Plaintiff acknowledges that SORTS has a legitimate security interest in limiting idols and statutes, but he argues that the least restrictive means would be a limitation on the size and number of such items, not a blanket ban of them. ECF No. 1 at 7. Similarly, Plaintiff asserts that there are blanket bans on prayer rugs, bracelets with charms, personal alters, personal pentacle plates, and personal musical instruments at SORTS. Plaintiff argues there should just be limits on the size and type of these items. *Id.* at 15, 20-22. Also, Plaintiff asserts that SORTS does not allow any religious service after dusk. Plaintiff argues that even if there is a legitimate security interest in not allowing service outside at night, services should still be allowed inside. *Id.* at 11. Instead of completely banning a Wiccan text which contains one nude image, Plaintiff argues SORTS could mark out or remove the one violating image. *Id.* at 12. Instead of no television viewing after 10:30 pm, Plaintiff argues that the television can be put on closed captioning. *Id.* at 18. Instead of real candles, Plaintiff argues that battery-operated LED candles should be allowed. *Id.* As to some items which have obvious safety issues – like open flames, wine, tattoos, time outside in winter weather, and personal use of a private room – Plaintiff states that such items should be allowed in controlled environments, limited amounts, and/or with restrictions. *Id.* at 12-13, 16, 23-24.

Plaintiff also alleges that SORTS denies items for religious use that are essentially the same as items allowed for non-religious use. For example, Plaintiff asserts that SORTS has a blanket ban on wands, wooden athames, robes for religious use, and Ouija boards. *Id.* at 6-8, 23. However, Plaintiff claims that SORTS allows pens and pencils of similar size and shape as wands, plastic butter knifes which are "substantially sharper than a wooden athame," bathrobes under personal clothing restrictions, and other board games.

For other items, Plaintiff argues that the extreme restrictions put on such items creates a substantial burden on the practice of his religion. For example, Plaintiff cites the weight and size restrictions on chalices, the number limitation on books, the allowance of personal books but not personal items to be purified in religious services, the size and color restrictions on alter cloths, and the restriction that only a Wiccan group can donate food for a Wiccan feast. *Id.* at 8-9, 17, 19, 25.

As for observing religious ceremonies on the day of the holiday, Plaintiff states that there is a Wiccan holy day about every two weeks but SORTS only accommodates one of the mandatory Wiccan holy days. *Id.* at 9-10. Plaintiff requests that SORTS accommodate eight (8) Wiccan holy days a year and one on the day of the month with a full moon. As for time allowed for religious ceremonies, Plaintiff states that SORTS currently only allows fifty (50) minutes for services, except for one 2-hour service a year. *Id.* at 13. Plaintiff requests three (3) hours for sabbat services requiring rituals. Plaintiff states that SORTS only allows food for one Wiccan holiday a year. *Id.* at 18. Plaintiff argues that they should be able to provide their own food to feast on seven (7) additional holidays per year, and that food donations should be allowed from any source, not just Wiccan groups. *Id.* at 25.

In addition, Plaintiff asserts that SORTS treats people unequally. For example, according to Plaintiff, Catholics are allowed to use grape juice in the place of wine for their religious

services and Native Americans are allowed to have dream catchers and pipes. *Id.* at 14, 22. However, apparently these same accommodations are not given to Wiccans.

C.     **Analysis**

Although Plaintiff has a right to free exercise of religion, because he is civilly committed, SORTS has the right and responsibility to make determinations about Plaintiff's safety and security. That responsibility could extend to limitations on some aspects of religious expression and practice. "RLUIPA does not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise or learning." *Van Wyhe*, 581 F.3d at 657. There is not sufficient information before the Court to determine whether decisions regarding Plaintiff's religious practice were arbitrary or based on legitimate interests. Because the Court is unfamiliar with the regulations at SORTS[9] regarding religious practice and materials, the Court cannot say with certainty whether Plaintiff's rights are being violated in the determination of his access to religious materials and services. As a result, Plaintiff's Complaint cannot be dismissed at the initial review phase.

However, although the Court finds that Plaintiff's Complaint contains sufficient factual allegations to survive initial review, this case cannot proceed because it is not clear whether Plaintiff has named the proper defendants.

It is unclear from the Complaint whether the named defendants are officials or employees of SORTS or the Missouri Department of Mental Health and if so, whether they have decision-making power at SORTS in regards to access to religious practice and materials. Plaintiff names as defendants the members of the "spiritual committee" and the "Green Belt Committee" but Plaintiff does not inform the Court as to what those committees are or do. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell*

---

[9] Although Plaintiff references an "Approved Religious Accommodations" text, such resource is not included with the Complaint and therefore has not been considered by the Court. ECF No. 1 at 3.

*v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). Here, Plaintiff provides no specifics on who John Doe is, or what he specifically did to violate Plaintiff's rights. Also, Plaintiff brings suit against John Doe in both his individual and official capacities. However, as stated above, RLUIPA does not allow individual-capacity claims against prison officials.

In addition, except as to Defendant John Doe, the Complaint is silent as to whether Defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, in this case, the Court does not have sufficient information to ascertain who employs the named defendants. The Court notes that throughout the Complaint Plaintiff refers to the "state" – as in the state's "compelling interest" or the state's "burden of least restrictive means." ECF No. 1 at 7, 11. But the "state" is not a named defendant in Plaintiff's Complaint.

Because Plaintiff is proceeding *pro se* and the allegations of his Complaint contain sufficient factual allegations to survive initial review, the Court will give him the opportunity to

file an amended complaint. Plaintiff is advised that the amended complaint will replace the original Complaint. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on the Court's form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) (FRCP 45) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms").

The Court reminds Plaintiff that the Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even *pro se* litigants are obligated to plead specific facts as to each named defendant and must abide by the Federal Rules of Civil Procedure. *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); Fed. R. Civ. P. 8(d)(1) (each claim shall be simple, concise, and direct); Fed. R. Civ. P. 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff is required to set out not only his alleged claims in a simple, concise, and direct manner, but also the facts supporting his claims as to each named defendant.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he seeks to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

It is important that Plaintiff allege facts explaining how each defendant was personally involved in or directly responsible for harming him. *See Madewell*, 909 F.2d at 1208. It is not

enough for Plaintiff to refer to a group of defendants and make general allegations against them. Instead, Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

The Court will give Plaintiff thirty days to file the amended complaint. Plaintiff is advised that the Court will review the amended complaint under 28 U.S.C. §1915.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed *in forma pauperis* [2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, plaintiff shall file an amended complaint in accordance with the instructions set forth herein.

**Plaintiff's failure to timely comply with this Order may result in the dismissal of this case, without prejudice and without further notice.**

Dated this 21st day of November, 2019.

_SL R. CR_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**