UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADAM DERBY, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02271-SRC |
| | ) |
| RICHARD WISKUS, et al., | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Adam Derby claims Missouri Department of Health employees at the state sex-offender treatment facility in Farmington violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) by denying thirty-two requests for items or accommodations related to his Wiccan religious practice. Defendants, employees at the facility, move for summary judgment, Doc. 59, maintaining that their decision to deny Derby's requests did not substantially burden his religious exercise. Alternatively, they argue that their denials furthered compelling government interests in safety, security, and control of contraband in a narrowly tailored way. For the reasons discussed below, the Court denies the motion.

**I.     Procedural History**

Defendants, in accord with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Doc. 60. After Derby failed to respond to that statement, or to the summary-judgment motion at all, the Court ordered Derby to show cause why the Court should not grant Defendants' motion. Doc. 65. Derby then filed a "Motion to Dismiss Defendants [sic] motion for Summary Judgment," Doc. 66, which the Court construes as an opposition to Defendants' motion for summary judgment.

Derby technically did not follow the procedures set forth in Rule 4.01(E) of this Court's Local Rules because he failed to specifically controvert the assertions in Defendants' Statement of Uncontroverted Material Facts. However, as Derby proceeds pro se and the Court maintains discretion in enforcing its own local rules, the Court affords Derby some leniency in this regard. *See Reasonover v. St. Louis County*, 447 F.3d 569, 579 (8th Cir. 2006) ("District courts have broad discretion to . . . enforce local rules" (citing *Nw. Bank & Tr. Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724–25 (8th Cir. 2003); *Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001))).

The Federal Rules of Civil Procedure require a party opposing summary judgment to dispute facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). And if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Derby's opposition—signed under penalty of perjury—did not cite particular parts of materials in the record, but Derby did attempt to identify factual disputes by pointing to factual statements in Defendants' brief and explaining his version of events. *See, e.g.*, Doc. 66 at p. 8. The Court therefore only deems admitted those facts in Defendants' Statement of Uncontroverted Material Facts that Defendants properly support and that Derby fails to effectively controvert in his "Motion to Dismiss Defendants [sic] motion for Summary Judgment."

The Court also grants Derby leniency regarding his filing a memorandum exceeding fifteen pages, Doc. 66, observing that the memorandum's formatting, among other things,

contributes to its length.  However, the Court does not consider Derby's surreply, Doc. 68, as Local Rule 4.01(C) prohibits parties from filing additional memoranda beyond a response and reply without leave of Court.

## II.     Uncontroverted material facts

Derby is currently an involuntarily detained resident in the custody of the Missouri Department of Mental Health at the "SORTS" facility (which stands for Southeast Missouri Mental Health Center–Sex Offender Rehabilitation Treatment Services) located in Farmington, Missouri.  Doc. 60 at p. 1.  Derby is a Wicca practitioner and the high priest of the Wiccan coven at the SORTS facility.  Doc. 60-2 at pp. 3–5.

Defendant Jeanie Semar is the director of the therapeutic recreation department and is a voting member, as well as the head, of the SORTS spiritual committee.  *Id.*  Defendant Richard Wiskus is a voting member of the SORTS spiritual committee.  *Id.* at p. 2.  Defendant Charles Lotz is a chaplain and voting member of the SORTS spiritual committee.  *Id.*  Defendant Hannah Neumeier was a SORTS recreation therapist and voting member of the spiritual committee.  *Id.*  Defendant Denise Hacker is the Chief Operating Officer at SORTS.  *Id.*  Defendant Kimberly Bye is the Director of Treatment Services at SORTS.  *Id.*  Defendant Brenda Swift is a SORTS patient advocate and grievance coordinator.  *Id.*  The parties do not indicate that Hacker, Bye, or Swift are members of the SORTS spiritual committee, but Defendants do not differentiate these three from the rest of the Defendants.  *See, e.g.*, Doc. 61 at pp. 1–2 ("In their decision to deny [Derby]'s requests, Defendants did not substantially burden [Derby]'s ability to exercise his religion . . . .").

While the parties do not describe the functions of the spiritual committee, the Court gleans from the record, but does not find as an undisputed fact, that it oversees religious

3

accommodations and makes decisions regarding religious-accommodation requests. *See, e.g.*, Doc. 60-3 at p. 2. The Court notes that it is unable to effectively consider Defendants' interrogatory responses because Defendants fail to provide the interrogatories to which they respond. Defendants also provide "Religious Accommodations Committee" meeting minutes, but it is unclear from the record whether that committee is the same as the "spiritual committee," a sub-committee, or something else. *See* Doc. 60-6.

According to Derby, when he first arrived at the facility, he asked about the religious accommodations provided, and said they seemed fair. But a month later, SORTS "removed half of those [unspecified] items and made major changes." Doc. 60-2 at p. 13. At that point Derby submitted a "team request" which he says is how residents communicate with staff at the facility. *Id.* According to Derby, after Semar denied the request, Derby went on a "year's-long campaign to try to find some type of compromise" that included filing grievances, having meetings, engaging in personal conversations with Semar, and making "group requests." *Id.* at p. 14. Derby stated in his deposition that "in the end Janine Semar said: 'We're not changing anything. And if you don't like it, sue me.'" *Id.*

Derby claims that the Defendants violated his rights under RLUIPA when they denied his requests for certain items and practices that he claims are necessary to his religion. Defendants do not dispute that they denied Derby's requests.

Derby made thirty-two total requests for religious accommodation in his Second Amended Complaint, including for items such as: wands, a wooden athame, idols/statues, robes, bigger chalices, books, wine for consumption on Sabbats, dream catchers, rugs, bracelets with charms, rings with religious symbols and stones, tea light candles, food for Sabbats, larger altar cloths, altars, pentacle plates, pipes, musical instruments, and Ouija or spirit boards. He also

4

requested accommodations for religious practices, including: religious ceremonies "on the day of our holidays," nighttime full moon and "Sabot" (also spelled "Sabbat") ceremonies, non-sexual nude images, open-flame fires, three hours of time on Sabbats, tattoos, "smudging" personal religious items, access to late-night news programs, foreign languages, religious oils, face painting, time outside daily, and a room for personal religious practice. *Id.* Derby is no longer requesting access to bracelets with charms or time outside daily, reducing the number of outstanding requests to thirty. Doc. 60 at ¶ 11; Doc 66 at p. 22.

The parties agree that SORTS prohibits the following items or practices:

- wands, when used as a personal item
- idols/statues
- wooden athame
- religious robes
- nighttime religious ceremonies
- non-sexual nude images
- open-flame fires
- wine for religious worship
- dream catchers
- getting tattooed
- smudging personal items (the ritual act of burning herbs to purify something of negative energy)
- tea light candles in residential rooms
- altars
- face painting
- pentacle plates
- musical instruments
- ouija/spirit boards
- religious oils
- pipes used for smoking tobacco

Doc. 60 at pp. 3–6. SORTS allows the following items or practices, but only under certain restrictions or subject to certain limitations:

- chalices, within certain guidelines
- books, though guidelines limit the number allowed
- special ceremonies for one religious holiday per year
- one-hour weekly meetings for worship

5

- one holiday feast per year
- altar cloths, within certain guidelines
- pipes, subject to facility guidelines
- daily time outside, if weather permits.

Doc. 60 at pp. 3–6. While Defendants do not articulate the process for making decisions on religious accommodations, Defendants state that they "have identified safety and security as their top priority when making or upholding religious policies." *Id.* at p. 6.

## III.   Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).

The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a). And "[o]f course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour &*

6

*Co. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993) (citation omitted). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

IV. Discussion

    A.    RLUIPA

"By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004); *see also Dunn v. Smith*, 141 S. Ct. 725, 209 (2021) (Kagan, J., concurring in denial of application to vacate injunction) (observing that "[RLUIPA] provides 'expansive protection' for prisoners' religious liberty" (quoting *Holt v. Hobbs*, 574 U.S. 352, 358 (2015))). The statute provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The parties do not dispute that RLUIPA's protections apply to civilly committed offenders at the SORTS facility.

7

The Eighth Circuit has noted that "RLUIPA explicitly provides for a cause of action to enforce the heightened free exercise right it creates." *Van Wyhe v. Reisch*, 581 F.3d 639, 649 (8th Cir. 2009) (citing § 2000cc–2(a)–(g)).  "In such a suit, if the institutionalized person 'produces prima facie evidence to support a claim,' by showing that the government practice substantially burdens the person's exercise of religion, then the government bears the burden of persuasion on every other element of the claim."  *Id.* (citing § 2000cc–2(b)).

And while the burden RLUIPA imposes on the government (which must show that the imposition is in furtherance of a compelling governmental interest, and is the least restrictive means of doing so) is higher than that applied in constitutional cases, the Eighth Circuit has held that courts afford "a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden."  *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009) (quoting *Murphy*, 372 F.3d at 987).

As Defendants point out, to constitute a "substantial burden" on the exercise of a person's religion, the government's actions:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (internal quotations, citations, and alterations omitted) (quoting *Murphy*, 372 F.3d at 987).  However, Defendants fail to address the Eighth Circuit's later observation that since the Supreme Court has clarified that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), the Eighth Circuit "alter[s] this definition somewhat in the RLUIPA context, mindful that RLUIPA's broad protection of "religious exercise" extends even to religious practices that are not "compelled by, or central to" a certain belief system.  *Van Wyhe*, 581 F.3d at 656 (noting that

8

while the Eighth Circuit had previously acknowledged, in *Patel* and *Gladson*, that "portions of the definition stated in *Murphy* requiring religious beliefs to be a 'central tenet' or 'fundamental' may not apply to a RLUIPA claim," it had not needed to reach the issue in those cases (quoting *Gladson*, 551 F.3d at 832–33; *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.7 (8th Cir. 2008))); *see also Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 750 (8th Cir. 2014) (declining to "define the contours of the inmates' religious beliefs" because RLUIPA defines "religious exercise" as "any exercise of religion, *whether or not compelled by, or central to*, a system of religious belief" (quoting 42 U.S.C. § 2000cc–5(7)(A))).

The Eighth Circuit has consistently held in the RLUIPA context that "no 'doctrinal justification' is required to support the religious practice allegedly infringed." *Native American Council of Tribes*, 750 F.3d at 750 (quoting *Gladson*, 551 F.3d at 833). Additionally, the Court must keep in mind that it "should not undertake to dissect religious beliefs . . . because [the] beliefs are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715 (1981).

And "of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation . . . ." *Holt*, 574 U.S. at 360–61 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014)). Here, Derby asserts that his requests relate to his ability to practice Wicca—a religion that the parties agree SORTS recognizes and accommodates—and at this stage Defendants do not dispute the sincerity of his religious beliefs or argue that his requests for accommodation are based on some other motivation.

B. **Defendants' summary-judgment motion**

With RLUIPA's text and the Supreme Court and Eighth Circuit's guidance in view, the Court turns to the facts of this case. In his Second Amended Complaint Derby outlined thirty-

9

two denied requests for accommodation. Doc. 60 at ¶ 9; Doc. 18 at pp. 8–10. Due to SORTS policy changes, Derby later withdrew his request for a bracelet with charms, as well as time outside daily, reducing the number of denied requests to thirty. Doc. 60 at ¶ 11; Doc 66 at p. 22. Derby addressed each of these requests during his deposition, Doc. 60-2, and also addressed most of them in his declaration in opposition to Defendants' motion for summary judgment. Doc. 66. The Court considers the assertions Derby makes in both documents. *See* Fed. R. Civ. P. 56(c)(3) (courts "may consider other materials in the record").

As the moving party, Defendants bear the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(a). As explained below, Defendants fail to meet this burden.

 1. **Defendants' initial responsibility as the proponents of summary judgment**

Defendants claim that Derby "has not properly demonstrated that SORTS policies and denials of his religious requests has placed a substantial burden on the practice of his religion." Doc. 61 at p. 12. But with respect to twenty-nine of Derby's thirty requests, Defendants fail in their "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

As an initial matter, nearly all of Defendants' legal arguments in support of this claim are misplaced. Defendants mainly argue that Derby "cannot claim his ability to exercise his religion has been substantially burdened" because he has failed to "exhaust[] alternative means of accommodating his religious . . . needs." Doc. 61 at pp. 8, 10, 11 (citing *Patel*, 515 F.3d at 815). But as Derby correctly points out, Doc. 66 at p. 3, the Supreme Court later held that while the

10

"alternative means" requirement remains appropriate in cases involving prisoners' First Amendment rights, "RLUIPA provides greater protection." *Holt*, 574 U.S. at 361. Under RLUIPA, the "'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at 361–62.

In their reply, Defendants similarly claim that "[a] prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." Doc. 67 at p. 10 (quoting *Murphy*, 372 F.3d at 983). But the portion of *Murphy* Defendants quote, which applied *Turner*'s "alternative means" inquiry to an inmate's constitutional free-exercise claim, noted that different standards applied to the inmate's separate claim under RLUIPA. *See Murphy*, 372 F.3d at 983 n.1, 986–97; *see also Turner v. Safley*, 482 U.S. 78, 90 (1987) (setting forth factors, including the availability of alternative means, for courts to consider when evaluating constitutional free-exercise claims).

Of Derby's thirty requests, Defendants arguably met their summary-judgment burden regarding only one: they informed the Court of the basis for their motion regarding Derby's request for additional meeting time on Sabbats, and identified the portions of the record which they believe demonstrate the absence of a genuine issue of material fact as to that request. In their memorandum in support of summary judgment they argue that although Derby claims twenty minutes of Wiccan meeting time is lost due to "setting things up," he "fails to explain why he needs as much as two additional hours to remedy this issue." Doc. 61 at pp. 9–10 (citing Doc. 60 at ¶ 51). However, as explained below, the Court concludes that Derby has provided enough evidence regarding his Sabbats-meeting-time request to create a genuine issue of material fact sufficient for a jury to find that he has met his threshold burden under RLUIPA.

11

In making this determination, the Court considers Derby's own testimony. *See, e.g.*, *Van Wyhe*, 581 F.3d at 656 (finding that an inmate's assertions in response to a summary judgment motion provided some evidence that his religious exercise was substantially burdened); *Murphy*, 372 F.3d at 988 (relying on an inmate's assertions to reverse an adverse grant of summary judgment). Derby addressed the issue in his deposition, Doc. 60-2, and in his declaration in opposition to Defendants' summary-judgment motion, Doc. 66.

In his declaration, Derby articulates why he needs additional time for rituals to "celebrate / honor / worship on a sabot," also known as Sabbat or high holiday. Doc. 66 at p. 7; Doc. 60-2 at p. 37; *see also* Doc. 60-2 at p. 9 (explaining that Wiccans observe eight Sabbats, or high holidays). On average, he states that it takes "10 to 15 minutes to pick up the resident [sic] for the ritual, 5 minutes to get the religious items out of the locker, 10 to 15 minutes to set up, 5 minutes to prepare by smudging, grounding, and centering (a meditative practice) and being blessed by the high priest, 1 hour for the body of the ritual, 10 to 15 minutes to clean up after and 1 hour to eat in honor of the Gods." Doc. 66 at p. 7. Derby asserts that Defendants currently allow one-and-a-half hours to celebrate Samhain, the one Sabbat Defendants allow Wiccans to observe. Doc. 60-2 at p. 31. But according to Derby, three hours is "just literally the physical time required to perform the ritual" on these Sabbats, or high holidays. Doc. 66 at p. 7; Doc. 60-2 at p. 37.

The Court notes that Derby's explanation is consistent with *Gladson*, where the record reflected that three hours provided adequate time to celebrate Samhain—one of the eight Sabbats—and that the inmates had not shown why eight hours was necessary. 551 F.3d at 834. Similarly, in *Van Wyhe* the Eighth Circuit noted that prison officials provided three hours for group meetings weekly, 581 F.3d at 657, and in *Weir*, found that a limit of three hours of group

worship per week did not substantially burden a Christian inmate's exercise of religion, 114 F.3d at 819–21. The Court finds that Derby has provided sufficient evidence for a jury to find that the denial of his request for three hours for worship on the eight Sabbats substantially burdened his exercise of religion.

### 2. Defendants' compelling-governmental-interest and least-restrictive-means burdens under RLUIPA

Defendants essentially concede that Derby has met his threshold burden under RLUIPA regarding twenty-nine of his thirty claims, and the Court finds he has met his burden regarding his Sabbats-meeting-time claim. However, the Court could still grant summary judgment in favor of the Defendants if they could show (under the summary judgment standard) that each denial: (1) "is in furtherance of a compelling governmental interest": and (2) "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(2).

According to the Supreme Court, "'[t]he least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364–65 (quoting *Hobby Lobby*, 573 U.S. at 728). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000)).

Derby acknowledges in his Second Amended Complaint that Defendants have a compelling interest in limiting some of the requested items or practices. Doc. 18 at pp. 12, 17–18, 20–25, 27–28. But even assuming Defendants have a compelling governmental interest for denying all thirty requests, they have not shown at this stage that the denials meet the "exceptionally demanding" least-restrictive-means requirement. *See Holt*, 574 U.S. at 364–65.

13

Defendants fail to make *any* least-restrictive-means arguments regarding many of Derby's requests. And where they do claim to make least-restrictive-means arguments, most are, in fact, compelling-governmental-interest arguments instead. Doc. 61 at pp. 12–16.

Defendants argue that because "SORTS is a facility focused on rehabilitating individuals convicted of sex crimes," Defendants "ha[ve] a compelling interest in limiting access to 'non-sexual nudity.'" Doc. 61 at p. 14. By "limiting access," Defendants mean "ban all access": Defendants cite *United States v. Wiedower*, 634 F.3d 490, 497 (8th Cir. 2011), arguing that case stands for the proposition that "a complete ban on pornography may be upheld depending on an offender's propensity to relapse." Doc. 61 at p. 14; *see also* Doc. 60 at ¶ 21 ("Non-sexual nude images are prohibited in SORTS.").

But apart from the issue of whether the "non-sexual nudity" at issue here is the same as the pornography or sexually explicit material at issue in *Wiedower*, Derby points out that Defendants allow residents at SORTS to possess magazines, such as "tattoo magazines" or "The New Yorker," containing "nude or nearly nude images." Doc. 66 at pp. 13–14. Additionally, Derby claims that Defendants are "working on writing [a] policy on how to provide healthy pornography to the SORTS residents for the purpose of treatment in a privet [sic] room." Doc. 66 at p. 14. And Defendants have not shown why, for example, they could not censor portions of nude images in The Witches' Bible or on tarot cards that Derby has requested, or restrict access to those items to the communal Wiccan locker, instead of preventing him from obtaining those items entirely. *See* Doc. 60-2 at pp. 33–35.

Defendants also make a least-restrictive-means argument regarding religious oils. Doc. 61 at p. 14. But the Court notes that according to Defendants' Statement of Uncontroverted Material Facts, "[r]eligious oils are prohibited at SORTS," Doc. 60 at p. 5. Then, in their

14

memorandum, Defendants argue that keeping the oils in the "secured, communal Wiccan locker" is the least restrictive means of furthering their compelling governmental interest in safety and security. Doc. 61 at p. 14. Defendants' conflicting positions create questions of material fact, and the Court finds that genuine issues of material fact exist as to the existence and extent of Defendants' prohibition on religious oils. Defendants therefore cannot meet their burden to show that their policy, whatever it is, regarding religious oils is the least restrictive means of furthering their compelling interest in safety and security.

Defendants' remaining least-restrictive-means arguments are instead compelling-governmental interest arguments. Regarding religious robes, Defendants merely point out that they "are concerned that individuals will use the robes to hide weapons or contraband." Doc. 61 at p. 15. While "[a] prison's interest in order and security is always compelling," *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008), and the Court has no reason to doubt the same is true of a civil treatment facility like SORTS, Defendants do not provide any reason why banning religious robes outright is the least restrictive means to further that interest. *See Holt*, 574 U.S. at 364–65. Defendants raise similar security concerns regarding Derby's request for nighttime ceremonies, pipes, and smudging personal items. Doc. 61 at pp. 15–16. But without more, raising security concerns does not meet RLUIPA's "exceptionally demanding" least-restrictive-means requirement. *See Holt*, 574 U.S. at 364–65.

## V.     Conclusion

Accordingly, the Court denies Defendants' [59] Motion for Summary Judgment.

So Ordered this 29th day of June 2022.

*SL R. CR*

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE