UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADAM DERBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-02271-SRC |
| ) | |
| RICHARD WISKUS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Memorandum and Order**

The Court previously granted Derby's motion to enforce settlement and—by what the Court determined was the agreement of the parties—entered a Final Judgment incorporating the parties' resolution of Derby's requests for accommodation. Doc. 147. The Court now considers Derby's request for prevailing-party attorney's fees under 42 U.S.C. § 1988. The Court grants Derby's Motion for Attorney's Fees and Costs. Doc. 158.

**I.    Background**

For background, see the Court's prior Memorandum and Order, Doc. 156, and Final Judgment, Doc. 157. In the Judgment, the Court set deadlines for any motion for attorney's fees, as well as for any response. Doc. 157 at ¶ 4. Derby timely filed a motion requesting fees in the amount of $99,481.00 based on a total of 266.2 hours counsel expended. Doc. 158-1 at ¶¶ 35–37. In response, Defendants only argued that counsel for Derby had billed unnecessary hours relating to three different motions. Doc. 162. Derby replied. Doc. 163.

**II.    Standard**

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home,*

1

*Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). "Under this 'American Rule,' [courts] follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). One such authority is 42 U.S.C. § 1988, which provides that "[i]n any action or proceeding to enforce a provision of . . . the Religious Land Use and Institutionalized Persons Act of 2000, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." *See also Buckhannon*, 532 U.S. at 602.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court outlined the major factors to be considered by a court in awarding attorney's fees: (1) whether an award is appropriate; and (2) the value of the services rendered as determined by the "lodestar" method. *Id.* at 433. The lodestar is calculated by determining the number of hours reasonably expended on the case and multiplying them by the applicable hourly market rate for the relevant legal services. *Id.*

"Th[e] [lodestar] method is meant to produce 'an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.'" *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 939 (8th Cir. 2021) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). The lodestar enjoys a "strong presumption" of reasonableness, although "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554–54.

III.  Discussion

    A.    **Prevailing-party status**

Derby argues that he is a prevailing party because, among other reasons, he "has obtained through litigation a Final Judgment that resulted in a material alteration of the legal relationship of the parties on the majority of his claims under RLUIPA." Doc. 159 at p. 5 (citing *Buckhannon*, 532 U.S. at 604). Defendants do not contest Derby's prevailing-party status. *See* Doc. 162. Alternatively, the Court previously found that the parties validly agreed to a consent judgment (which, as noted, Defendants refused to enter into for what they considered to be strategic reasons, *see* Doc. 156 at pp. 6–7); and the Court's Final Judgment constitutes a consent judgment for purposes of awarding attorney's fees. *See Buckhannon*, 532 U.S. at 604; *see also Christina A. ex rel. Jennifer A v. Bloomberg*, 315 F.3d 990, 994 n.4 (8th Cir. 2003) (noting that "[a] consent decree is defined as '[a] *court decree* that all parties agree to'" (quoting Black's Law Dictionary 419 (7th ed. 1999)); *Decree*, Black's Law Dictionary (11th ed. 2019) (defining "decree" as, among other things, "[a] court's final judgment"). In either event, the Court finds that Derby is entitled to attorney's fees under applicable law.

Accordingly, the Court exercises its discretion to award Derby reasonable attorney's fees under § 1988. *See* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."); *see also Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) ("Prevailing plaintiffs should ordinarily recover fees unless special circumstances would make such an award unjust." (citations omitted)). The Court turns next to the question of reasonableness. *See Hensley*, 461 U.S. at 433.

### B. Reasonableness

The Court begins by following the "lodestar" method, which multiplies the number of hours reasonably expended on the case by the applicable hourly market rate for the relevant legal services. *Id.* The Court may also consider whether the circumstances of the case warrant an enhancement or reduction to the lodestar. *See Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir. 1996).

#### 1. Reasonable hourly rates

According to LeMoine's declaration, he and associate attorney Katherine Asfour represented Derby in this matter. Doc. 158-1 at ¶¶ 9–10. LeMoine is a 2000 graduate of the University of Missouri-Columbia School of Law, and he served as a law clerk to the Honorable E. Richard Webber from 2000 to 2002. *Id.* at ¶ 6. LeMoine is one of two named partners of Beckemeier LeMoine Law, which "practices in the area of religious liberty (among other things), and has experience representing clients related to religious liberty claims." *Id.* at ¶ 4. LeMoine states that he has practiced law since 2002 and has handled bench and jury trials, as well as arbitrations. *Id.* at ¶ 7. He also states that he has experience litigating employment-law and civil-rights cases, as well as other types of cases involving alleged violations of federal statutes. *Id.* at ¶ 8. LeMoine tried the case himself, while Defendants utilized two attorneys at trial. *Id.* at ¶ 12. LeMoine billed at an hourly rate of $390.00. *Id.* at ¶ 13.

Katherine Asfour, an associate at Beckemeier LeMoine Law, assisted with certain motions and memoranda LeMoine filed in the case. *Id.* at ¶ 10. Asfour is a 2016 graduate of Washington University School of Law, and has practiced law since 2016 at three different law firms, all of which have substantial litigation practices. *Id.* at ¶ 11. Asfour billed at an hourly rate of $295.00. *Id.* at ¶ 14.

4

The Court notes that while most of the billing entries in the invoice attached to LeMoine's declaration match the hourly rates listed above, two billing entries list the hourly rates for LeMoine and Asfour as "$370.00" (for a 0.50 hour entry) and "$285.00" (for a 1.4 hour entry), respectively.  *See* Doc. 158-1 at pp. 12, 13.  As a result the total amount of attorney's fees Derby requests, $99,481.00, is $24.00 less than the amount resulting from multiplying his requested rates by his requested hourly totals.

To support the reasonableness of the hourly rates, LeMoine relies on the Missouri Lawyers Weekly's 2022 Billing Rates survey.  *Id.* at ¶ 16.  According to the survey, the median hourly rate for Missouri lawyers as a whole was $400 per hour, and the statewide median for partners was $450.  *Id.* at ¶ 16; *see also* Scott Lauck, *Welcome to Billing Rates 2022*, Missouri Lawyers Media (Nov. 20, 2022), available at https://molawyersmedia.com/2022/11/21/welcome-to-billing-rates-2022/ (last visited April 3, 2023) (stating that the cases examined in the survey are "most often" cases subject to a fee-shifting statute, such as employment and civil-rights cases).  Based on his review of the survey, LeMoine states that "partners in Missouri litigating civil rights actions used billing rates between $195 per hour and $650 per hour in 2021 and 2022."  Doc. 158-1 at ¶ 18.  Defendants do not contest the reasonableness of Derby's hourly rates.  *See* Doc. 162.

The Court has carefully examined LeMoine's declaration, as well as the billing-rates survey, and concludes that the hourly rates Derby proposes for LeMoine and Asfour are reasonable.  *See also D.L. v. St. Louis City Pub. Sch. Dist.*, No. 17-CV-01773-RWS, 2019 WL 1359282, at *2 (E.D. Mo. Mar. 26, 2019) (approving rates of $300 and $400 where plaintiff submitted evidence "demonstrating billing rates of $200–$350 for 'attorneys' or 'associates' . . . and billing rates of $350–$500 for 'partners' practicing employment or civil rights law in the St.

5

Louis metropolitan area") (citation omitted)).  Accordingly, when calculating the lodestar the Court uses the rates set forth in the bills submitted.

### 2. Hours reasonably expended

The Court next determines the number of hours reasonably expended on the case.  "[A]ny fees must be 'reasonably expended,' so that services that were redundant, inefficient, or simply unnecessary are not compensable."  *See Jenkins*, 127 F.3d at 716 (quoting *Hensley*, 461 U.S. at 434).  The prevailing party must submit documentation to establish the amount of the requested attorneys' fees; must exercise "billing judgment"; and must be mindful that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Hensley*, 461 U.S. at 434 (*citing Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," which typically "will encompass all hours reasonably expended on the litigation . . . ."  *Hensley*, 461 U.S. at 435.  On the other hand, "partial or limited success" may render the lodestar figure excessive.  *Id.* at 436.  "[T]he most critical factor is the degree of success obtained" and "the range of possible success is vast."  *Id.*

LeMoine states he spent 220.8 hours on this case, and Ashfor spent 45.4 hours.  Doc. 158-1 at ¶¶ 35–36.  Derby states in his motion for attorney's fees that LeMoine "expended 218.5 hours" in the case; however, the Court's review of the billing entries in Doc. 158-1 confirms that the total number of hours LeMoine expended is 220.8, consistent with LeMoine's declaration, Doc. 158-1 at ¶ 36.  LeMoine also states that he voluntarily "discounted the invoice by approximately $12,000.00" after "excluding hours that could have been deemed excessive, redundant, or otherwise unnecessary . . . ."  *Id.* at ¶ 40.  Derby argues that the hours his counsel

6

expended on the case were reasonable and necessary, and that his fee request is reasonable in light of the degree of success he obtained in the case. Doc. 159 at pp. 6–9; Doc. 158-1 at ¶ 39.

Defendants challenge only hours Derby's counsel billed regarding three different motions. Doc. 162 at p. 2. The Court addresses Defendants' arguments in turn before evaluating the number of hours counsel for Derby reasonably spent on the case overall.

### a. Motion for attorney's fees

First, Defendants contend that the 23.6 hours counsel for Derby billed for preparing Derby's motion for attorney's fees was excessive. Doc. 162 at p. 2. Defendants rely on *Hershey v. Jasinski*, where the district court concluded that the 13.1 hours the plaintiff's attorney spent preparing a motion for attorney's fees was "excessive" in light of: (1) "the nature of the case"; (2) the fact that the plaintiff failed to use the correct bill of costs form, necessitating additional briefing; and (3) the fact that the motion for fees was "only partially successful." No. 20-06088-CV-W-BP, 2022 WL 2103977, at *3 (W.D. Mo. May 12, 2022). The court declined to exempt the hours spent preparing the motion for fees from the court's overall 15% reduction (which the court had imposed based on the plaintiff's partial success in the case). *Id.* Here, Defendants essentially argue that because 13.1 hours spent preparing a motion for fees was unreasonable in *Hershey*, the 23.6 hours counsel for Derby spent pursuing Derby's motion for fees must be unreasonable.

Derby responds by arguing that the number of hours his counsel spent on the motion for attorney's fees was reasonable, due to: (1) "the complexity of the case, which necessitated the appointment of counsel in the first place"; and (2) the fact that all the time his counsel spent in this matter "was spent on claims for injunctive relief that were largely successful." Doc. 163 at p. 1. Derby argues that *Hershey* is inapposite because, among other things, Defendants do not

7

argue that Derby's counsel made mistakes like the one counsel made in *Hershey*. *Id.* at p. 2. Further, Derby argues that several aspects of this case required additional research: (1) the timing of his counsel's appointment in relation to Derby's success in the case; (2) "the appropriateness of an award of attorney's fees in the context of a settlement"; (3) "the requirements for such an award"; and (4) "the nature of the relief" Derby obtained, "i.e., an order enforcing a settlement to be embodied in a judgment." *Id.* at pp. 1–2.

For the reasons Derby identifies—and because, as explained below, the Court grants Derby's motion for attorney's fees without imposing a percentage reduction for partial success as the court did in *Hershey*—the Court agrees with Derby that *Hershey* is inapposite. Further, the Court concludes that in light of the complexity of the issues involved with the parties' settlement, the number of hours counsel for Derby spent on the motion for attorney's fees was reasonable.

### b.    Motion for reconsideration and motion for contempt

Defendants' second and third arguments—that the Court should not award fees for hours Derby's counsel expended on Defendants' motion for reconsideration or Derby's motion for contempt—are related. Defendants characterize their motion for reconsideration as "a necessary[] and successful step in avoiding a consent judgment to which Defendants did not agree," and argue that as a result the Court should not compensate Derby for the 20.8 hours his counsel billed for preparing Derby's response. Doc. 162 at p. 2. Defendants argue, without further explanation, that their motion for reconsideration "was necessitated by Counsel's actions in the scope of the case." *Id.* Although it is not entirely clear which counsel Defendants are referring to, and it is possible Defendants could mean their trial counsel who are no longer involved in the case, the Court gathers from the context that Defendants are arguing that counsel for Derby somehow caused them to file their motion. *See id.*

8

Defendants also contend that the Court should not compensate Derby for the 6 hours his counsel billed regarding Derby's motion for contempt because the motion "was not successful, wasted judicial resources, and was ultimately not necessary." Doc. 162 at p. 2 (arguing that "unnecessary motions should not be compensated especially when they are resolved largely in favor of the opposing party." (citing *Miller v. Dugan*, 764 F.3d 826, 833 (8th Cir. 2014))).

In response, Derby maintains that Defendants filed their motion for reconsideration "because Defendants refused to comply with the Court's order that both parties file a jointly stipulated consent judgment," and contends that Derby filed his motion for contempt for the same reason. Doc. 163 at p. 2. As to the motion for reconsideration, Derby argues that the Court "largely denied" the motion, and that "the time spent by Derby's counsel in responding to th[e] motion was both necessary and warranted given the importance of the issues being briefed before the Court." *Id.* Derby contends that in responding to the motion for reconsideration he sought to "preserv[e] his hard fought success having had his motion to enforce settlement granted," and points out that while the Court ultimately did not require Defendants to file a joint stipulation, the Court's Final Judgment still "embod[ied] the settlement" and "awarded substantial relief to Derby on his claims." *Id.*

Derby argues that the motion for contempt was not a waste of judicial resources, as Defendants claim, because the Court "was able to address it quickly and efficiently in the context of addressing the Motion for Reconsideration." *Id.* at p. 3. Derby also explains that he filed the motion for contempt "because he found himself in a difficult situation substantively and procedurally," as he was unable to comply with the Court's Order to submit a joint stipulation due the Defendants' own refusal to comply. *Id.*

9

The Court agrees with Derby.  Moreover, the Court notes that—apart from the motion for attorney's fees—all the motions and associated briefing following the Court's order granting Derby's motion to enforce settlement, Doc. 146, stemmed from *Defendants'* unwillingness to sign a stipulation for consent judgment pursuant to the terms of the parties' settlement.  In partially granting Defendants' motion for reconsideration, the Court concluded:

> Having found that the parties agreed to entry of a consent judgment, the Court properly ordered the parties to perform that agreement, including by entering into that consent judgment.  Doc. 146.  However, the Court agrees with the parties that, having granted Derby's motion to enforce settlement, the Court also could enter judgment enforcing the settlement.  Doc. 146 (finding that the parties' agreement included, among others, that "the settlement would be embodied in a Court order, and the Court would retain jurisdiction for enforcement purposes").  Accordingly, the Court grants Defendants' motion for reconsideration in part, insofar as the Court now enters a separate judgment incorporating the terms of the parties' settlement.

Doc. 156 at p. 7.

Further, when denying Derby's motion for contempt, the Court noted that while "[c]ivil contempt may be employed . . . to compensate the complainant for losses sustained," Doc. 156 at p. 11 (quoting *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000)), the Court could also "address the fees Derby incurred in responding to Defendants' motion for reconsideration" when the Court ruled on Derby's motion for fees, *id.* at p. 12.  For these reasons, the Court finds that Derby is entitled to a fee award for all of the hours his counsel spent on Derby's motion for contempt and Derby's response to Defendants' motion for reconsideration.

### c.     Hours reasonably expended overall

The Court next must determine:  (1) the number of hours counsel for Derby reasonably expended on the case, and (2) whether Derby obtained "excellent results" justifying a "fully compensatory fee."  *Hensley*, 461 U.S. at 433–34, 436.

10

As an initial matter, Derby contends that the degree of success he obtained in the case "was material, significant[,] and substantial." Doc. 159 at p. 7. Derby also notes that the Court dismissed Derby's other claims before appointing LeMoine as Derby's counsel; accordingly, all of the attorney's fees Derby seeks relate to his claims for injunctive relief under RLUIPA, and all of the fees incurred after the July 19, 2022 mediation relate to the prosecution of the five requests for accommodation that remained at issue for trial. Doc. 159 at p. 7. Further, Derby notes that he successfully obtained relief on all five of those requests for accommodation, and that the relief he obtained was not solely applicable to Derby himself, but also benefitted other SORTS residents who identify as Wiccans. *Id.*

Relying on LeMoine's declaration, Doc. 158-1, Derby contends that "the time and labor required in the case was considerable but reasonable in light of the amount of work required to mediate the case, prepare it for trial, try the case, and then work on post-trial issues including the motion to enforce settlement." Doc. 159 at p. 8. Derby identifies that when appointing LeMoine as counsel, the Court recognized the existence of conflicting testimony and stated that "the issues in the case, including whether Defendants could meet RLUIPA's 'exceptionally demanding' least-restrictive-means test, were relatively complex." *Id.*; *see* Doc. 73. Derby further contends that LeMoine's experience in litigating civil-rights and religious-liberty claims in federal court played an important role in the case, and that the time LeMoine spent on Derby's case precluded him from working on matters where receiving attorney's fees was relatively certain. Doc. 159 at p. 8.

The Court considers that counsel for Derby did not know if they would receive compensation for their efforts in this case and were thus incentivized to be efficient. *See M.B. v. Tidball*, No. 17-CV-04102, 2020 WL 1666159, at *14 (W.D. Mo. Apr. 3, 2020), *aff'd sub*

11

*nom. M.B. by Eggemeyer v. Tidball*, 18 F.4th 565 (8th Cir. 2021) (first citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); and then citing *Tussey v. ABB, Inc.*, No. 06-CV-04305, 2019 WL 3859763, at *5 (W.D. Mo. Aug. 16, 2019)). And although Defendants do not object to the lack of delineation between discrete tasks within Ashfor's billing entries, the Court nevertheless has carefully reviewed those entries, and agrees with Derby that the time Ashfor spent on pre- and post-trial briefing was reasonable. *See Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) (finding no abuse of discretion where district court did not reduce award for "block-billed" time entries, despite the defendant's argument that the practice "prevent[ed] meaningful analysis of the time spent on each discrete task").

Having carefully considered the parties' arguments, as well as the billing records Derby submitted, the Court concludes that the hours counsel for Derby expended on the case are reasonable. *See League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 940 (8th Cir. 2021); *see also Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (concluding that district court's statement "that it had taken both the parties' arguments and the submitted billing records under careful consideration in determining the fee award" was enough to show that it "fulfilled its responsibility of providing a concise but clear explanation of its reasons" (cleaned up)).

Finally, the Court agrees with Derby that he obtained "excellent results" in this case and that his counsel thus "should recovery a fully compensatory fee . . . encompass[ing] all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435. In making this determination, the Court notes that Defendants do not contest Derby's characterization of the degree of success he obtained in the case, and—apart from the three motion-specific arguments addressed above—do not argue that the Court should reduce the fee award based on Derby's

degree of success. *See* Doc. 162. The Court also notes that Derby does not seek any costs other than the attorney's fees discussed above.

### IV. Conclusion

For the above reasons, the Court grants Derby's [158] Motion for Attorney's Fees and Costs and awards Derby a total of $99,481.00 in attorney's fees.

So Ordered this 3rd day of May 2023.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE